UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHGIAN
SOUTHERN DIVISION

_____

**DENISE SIKKEMA,**

          Plaintiff,

v.

**SPRING MEADOW NURSERY, INC.,**
a Michigan corporation,

          Defendant.

Case No: 1:24-CV-

Hon.

_____

# COMPLAINT AND JURY DEMAND
_____

### COMPLAINT

Plaintiff Denise Sikkema, by and through her attorneys, Pinsky Smith, PC, states as follows:

### JURISDICTION, VENUE, AND PARTIES

1. This is an action seeking to remedy violations of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

2. Plaintiff Denise Sikkema is a resident of Ottawa County, Michigan, and the Western District of Michigan. Plaintiff was employed by Defendant for 23 years until her termination on November 27, 2023.

3. Defendant Spring Meadow Nursery, Inc., is a for-profit corporation organized under Michigan law and operates within Ottawa County and the Western District of Michigan.

4. The acts that are the subject of this action occurred in the Western District of Michigan.

5. Jurisdiction and venue are proper in this Court.

## FACTUAL ALLEGATIONS

6. Defendant is a wholesale shrub supplier in Grand Haven, Michigan. Dale Deppe is the company's founder and President. Dale Deppe's son, Jeremy Deppe, is the General Manager.

7. In March 2000, Plaintiff began working for Defendant as an Assistant Growing Manager. Plaintiff's primary responsibilities were irrigation, fertilization, crew assignments, and product logistics. Plaintiff also assisted the Growing Manager in revamping Defendant's fertilization program.

8. In 2003, Defendant's Growing Manager resigned. For roughly two years following the Growing Manager's departure, Plaintiff performed the responsibilities of the Growing Manager. Although various employees acted as co-manager for brief periods of time, Plaintiff performed the majority of the Growing Manager's responsibilities.

9. In June 2005, Plaintiff approached Dale Deppe and Jeremy Deppe to discuss the terms of her employment. Because she had been performing the role and responsibilities of Growing Manager since 2003, Plaintiff requested that Defendant

change Plaintiff's title and compensation. Jeremy Deppe refused Plaintiff's request to change her title or increase her salary. He agreed only to increase Plaintiff's bonus amount while she was performing the responsibilities of Growing Manager.

10. In October 2005, Defendant promoted a male employee to the position of Growing Manager. Plaintiff was unofficially demoted to the Assistant Growing Manager position, although she continued to perform some of the responsibilities of the Growing Manager.

11. During the years that followed Plaintiff's unofficial demotion, she increased her responsibilities and took on new and challenging projects. Like many of Defendant's other female employees, however, Plaintiff's contributions went unrewarded by Defendant.

12. Throughout her tenure, Plaintiff witnessed female employees get passed over for promotions that instead went to male employees. Management frequently failed to open senior positions for application and simply promoted male employees.

13. Experienced employees were also passed over for promotion in favor of younger, inexperienced employees. Jeremy Deppe commented on several occasions that he liked hiring younger employees because they could learn his way of doing things.

14. During her employment, Plaintiff became aware that Defendant was willing to tolerate sexism and misogyny from its male employees.

15. In 2020, Plaintiff reported to her supervisor that a male colleague had made inappropriate and disturbing comments about her. The male colleague told another employee that he was extremely angry at Plaintiff, and that he had performed a violent sexual act with his wife to deal with his anger. An investigation by Defendant's Human Resources (HR) Department corroborated Plaintiff's account, but Defendant took no action against this employee.

16. Plaintiff later learned that the same male employee had expressed violent inclinations toward another female employee ("Female Employee 1"). That male employee had told co-workers that he wanted to kill Female Employee 1 because she was a "bitch." Female Employee 1 reported the incident to HR, but Defendant's management said that they would not fire the male employee because "he had a family to think about." The male employee was later fired for performance issues.

17. Female Employee 1 was scared to come to work, and ultimately resigned.

18. The HR manager – Daniela Deppe, the wife of General Manager Jeremy Deppe – had made similar statements before that she takes firing an employee very seriously because their family might be affected, in explaining why she took a long time to terminate a different, incompetent male manager.

19. In another instance, Ms. Deppe told Plaintiff to make amends with a male employee who refused to speak to Plaintiff for over a year because he believed Plaintiff was responsible for a reprimand he received. Thereafter, the HR

4

Department held a meeting with employees and directed them to handle "drama" among co-workers on their own and refrain from involving HR.

20. In April 2023, after more than twenty years with the company, Plaintiff again requested a promotion to reflect her contributions. Plaintiff submitted her proposal for promotion to Eric Martz, Defendant's Operations Manager. Plaintiff's proposal detailed the responsibilities she had accumulated over the years and her contributions to the company.

21. In June 2023, Mr. Martz told Plaintiff that Jeremy Deppe had denied her proposal for a promotion. Plaintiff later learned that Mr. Martz's statement was untrue, and that he had not even submitted her proposal to Mr. Deppe.

22. In September 2023, Plaintiff met with Jeremy Deppe to ask why her promotion proposal was denied. Mr. Deppe told her that he had not received a formal promotion proposal; however, Mr. Deppe said that he would have denied the request anyway. Mr. Deppe questioned Plaintiff about why she hadn't pursued senior positions in the past, and Plaintiff responded that she believed that sexism had prevented her from advancing in the company.

23. Plaintiff was unsure of where to turn next to discuss her concerns. Plaintiff was reluctant to contact HR because Ms. Deppe is the HR Manager and the wife of the General Manager.

24. On October 6, 2023, Plaintiff approached Gabie Engel, Defendant's HR and Payroll Specialist, to ask how to submit materials for her personnel file and to

seek advice on how direct she could be in communication about her concerns. Ms. Engel said that she would discuss the matter with Ms. Deppe.

25. On October 10, 2023, Plaintiff was called into a meeting with Ms. Deppe, Ms. Engle, and Mr. Martz. Ms. Deppe and Mr. Martz alleged it was a meeting to "seek to understand" her concerns. Initially, Plaintiff explained her concerns like the continual growth of her responsibilities without a promotion, the inexperience of other employees they promoted for key roles, and Mr. Martz's failure over two years to address any of these concerns and how that impacted the workplace. Throughout the conversation, instead of making any real attempt to hear or understand the concerns of Plaintiff – a loyal employee who had worked there for more than two decades – Ms. Deppe and Mr. Martz were very confrontational, defensive, and disparaging to Plaintiff. At the end of the meeting, Mr. Martz referenced Plaintiff's prior statement to Jeremy Deppe that Plaintiff felt her inability to be promoted at Defendant was due to sexism. Mr. Martz reminded Ms. Deppe that they wanted to ask Plaintiff if Plaintiff also agreed with the sexism complaints made by Female Employee 1 when she resigned. Ms. Deppe claimed she wanted to understand why Plaintiff and Female Employee 1 believe there is sex discrimination at Defendant's workplace because she does not see it but said she wanted to correct it if it existed. In response, Plaintiff started giving Mr. Martz and Ms. Deppe examples of sex discrimination at the company. Ms. Deppe became argumentative and hostile again in response.

26. On November 15, 2023, Plaintiff requested a copy of her personnel file, pursuant to Michigan's Bullard-Plawecki Employee Right to Know Act, from the HR Department.

27. On November 27, 2023, Defendant terminated Plaintiff's employment, citing pretextual reasons that Plaintiff was allegedly disengaged and not present, and that she froze people out. Those claims were all false. Plaintiff's performance reviews all reflected that she was an excellent employee, and never mentioned the issues alleged by Defendant, which were all pretext for Defendant's retaliation for Plaintiff's reports of unlawful discrimination.

28. Defendant also accused Plaintiff of "distrusting" Defendant because she had accessed her personnel file, and based her termination in part on Plaintiff's request to see her file.

29. Despite Defendant's history of being extremely slow to terminate male employees with legitimate performance problems, Ms. Deppe fired Plaintiff – a 23-year employee with a strong work history – within weeks of raising troubling concerns about sex discrimination and hostile environment at Defendant.

## COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e *et seq.* – SEX DISCRIMINATION AND HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEX

30. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

31. Defendant repeatedly failed to promote Plaintiff because of her sex, instead choosing to promote male employees.

32. Defendant repeatedly engaged in sexist personnel decisions which resulted in a hostile work environment, marked by an extreme level of sex discrimination.

33. When Plaintiff raised concerns about sex discrimination to Defendant's management, Defendant retaliated against Plaintiff by terminating her employment.

34. The reasons alleged by Defendant in support of its decision to terminate Plaintiff were never raised before Plaintiff complained about sex discrimination and were pretext for Defendant's unlawful sex discrimination of Plaintiff and retaliation for her complaints about that discrimination.

35. Defendant failed to promote Plaintiff because of her sex, subjected her to a hostile and discriminatory work environment, and terminated Plaintiff because of her sex and in retaliation for her complaints about sexism.

36. Defendant violated 42 U.S.C. § 2000e–2 when it terminated Plaintiff's employment as aforesaid.

37. As a result of the foregoing, Plaintiff lost earnings and benefits and future earnings and benefits and suffered mental anguish, emotional distress, unfair reputational damage, and undue harm to her career, as well as incurred attorney fees, for which Defendant is liable.

## Statutory Prerequisites

38. Pursuant to 42 U.S.C. § 2000e–5(e), Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).

39. EEOC advised Plaintiff by letter, a copy of which is attached as Exhibit 1, that she was entitled to institute a civil action within 90 days of receipt of said letter, in accordance with 42 U.S.C. § 2000e–5(f)(1).

40. WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendant including the following relief: (1) an award of lost wages and benefits; (2) an award of future loss wages and benefits; (3) compensatory damages for emotional and mental distress; (4) punitive damages in an amount as determined by a jury; plus (5) interest and costs, including reasonable attorney's fees, and any other relief deemed necessary and proper by the Court.

## COUNT II – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e *et seq.* – RETALIATION

41. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

42. Defendant violated 42 U.S.C. § 2000e–3 when it terminated Plaintiff's employment and engaged in the other retaliatory acts as aforesaid.

43. Plaintiff has suffered irreparable harm, in that she was unlawfully terminated as aforesaid, and will continue to suffer such harm unless the relief requested herein is granted.

### Statutory Prerequisites

44. Pursuant to 42 U.S.C. § 2000e–5(e), Plaintiff filed a charge of

retaliation with the Equal Employment Opportunity Commission (EEOC). EEOC advised Plaintiff by letter, a copy of which is attached as Exhibit 1, that she was entitled to institute a civil action within 90 days of receipt of said letter, in accordance with 42 U.S.C. § 2000e–5(f)(1).

45. As a result of the foregoing, Plaintiff lost earnings and benefits and future earnings and benefits and suffered mental anguish, emotional distress, unfair reputational damage, and undue harm to her career, as well as incurred attorney fees, for which Defendants are liable.

WHEREFORE, Plaintiff requests that the Court grant her judgment against Defendant including the following relief: (1) an award of lost wages and benefits; (2) an award of future loss wages and benefits; (3) compensatory damages for emotional and mental distress; (4) punitive damages in an amount as determined by a jury; plus (5) interest and costs, including reasonable attorney's fees, and any other relief deemed necessary and proper by the Court.

                                            PINSKY SMITH, PC
                                            Attorneys for Plaintiff Denise Sikkema

Dated: November 5, 2024          By:/s/ *Sarah R. Howard*
                                            Sarah Riley Howard
                                            Elizabeth L. Geary
                                            146 Monroe Center St NW, Suite 418
                                            Grand Rapids, MI  49503
                                            (616) 451-8496

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth above, Plaintiff hereby demands same.

PINSKY SMITH, PC
Attorneys for Plaintiff

Dated: November 5, 2024         By:/s/ *Sarah R. Howard*
Sarah Riley Howard
Elizabeth L. Geary
146 Monroe Center St NW, Suite 418
Grand Rapids, MI  49503
(616) 451-8496